AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of
Black Samsung Cellular Phone.

Case No. 21-3202 MB

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before _October 6, 2021_ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>any United States Magistrate Judge on criminal duty in the District of Arizona</u>.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _Sept 22, 2021 @ 2:50pm_     _M Morrissey_
                                                    *Judge's signature*

City and state: <u>Phoenix, Arizona</u>     <u>Honorable Michael T. Morrisey, U.S. Magistrate Judge</u>
                                            *Printed name and title*

## ATTACHMENT A

*Property to be Searched*

The property to be searched is one (1) black Samsung cellular phone seized from Ernesto Mejia Ruiz (hereafter "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently in the Evidence Vault at the Ajo Border Patrol Station located at 850 AZ-85, Ajo, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

*Items to be Seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE, as well any included SIM card and/or any removable memory card, that relate to violations of 8 U.S.C. § 1324, including:

   a. all information related to the bringing in, harboring, or transportation of aliens;

   b. all bank records, checks, credit card bills, account information, or other financial records;

   c. all information regarding the receipt, transfer, possession, transportation, or use of proceeds from alien smuggling activities including, but not limited to, real estate, vehicles, rental agreements, clothing, furniture, and electronic equipment;

   d. any records indicating sources, types, amounts, and prices of fees associated with the smuggling or harboring of illegal aliens as well as dates, places, and amounts of specific transactions;

   e. any records or information relating to domestic an international travel, including schedules, appointments, gas receipts, notes, letters, airline tickets, bus tickets, food receipts, hotels, lodging receipts, and related correspondence;

   f. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms the user entered into any Internet search engine, and records of user-typed web addresses;

g. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

h. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contact lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio records; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications in third party messaging apps (i.e., Facebook, WhatsApp, etc.); reminders, alerts, and notes; and any other information in the stored memory or accessed by the electronic features of the SUBJECT CELLULAR TELEPHONE.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| In the Matter of the Search of Black Samsung cellular phone. | Case No. 21-3202MB |
|---|---|

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 (a)(1)(A)(ii) | Unlawful Transportation of Certain Aliens |

The application is based on these facts:

**See attached Affidavit of Border Patrol Agent Anthony R. Lucero.**

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Abbie Broughton Marsh
*Digitally signed by ABBIE BROUGHTON MARSH*
*Date: 2021.09.21 15:27:31 -07'00'*

Sworn to telephonically.
Date: Sept. 22, 2021
City and state: Phoenix, Arizona

*Anthony Lucero*
*Applicant's Signature*

Anthony R. Lucero, United States Border Patrol
*Printed name and title*

*M Morrissey*
*Judge's signature*

Honorable Michael T. Morrisey, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be Searched*

The property to be searched is one (1) black Samsung cellular phone seized from Ernesto Mejia Ruiz (hereafter "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently in the Evidence Vault at the Ajo Border Patrol Station located at 850 AZ-85, Ajo, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

*Items to be Seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE, as well any included SIM card and/or any removable memory card, that relate to violations of 8 U.S.C. § 1324, including:

   a. all information related to the bringing in, harboring, or transportation of aliens;

   b. all bank records, checks, credit card bills, account information, or other financial records;

   c. all information regarding the receipt, transfer, possession, transportation, or use of proceeds from alien smuggling activities including, but not limited to, real estate, vehicles, rental agreements, clothing, furniture, and electronic equipment;

   d. any records indicating sources, types, amounts, and prices of fees associated with the smuggling or harboring of illegal aliens as well as dates, places, and amounts of specific transactions;

   e. any records or information relating to domestic an international travel, including schedules, appointments, gas receipts, notes, letters, airline tickets, bus tickets, food receipts, hotels, lodging receipts, and related correspondence;

   f. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms the user entered into any Internet search engine, and records of user-typed web addresses;

g. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

h. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contact lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio records; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications in third party messaging apps (i.e., Facebook, WhatsApp, etc.); reminders, alerts, and notes; and any other information in the stored memory or accessed by the electronic features of the SUBJECT CELLULAR TELEPHONE.

## **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

Your Affiant, Anthony Lucero, being first duly sworn, hereby deposes and states as follows:

### I. **INTRODUCTION AND AGENT BACKGROUND**

1. Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone further described in Attachment A (hereafter "SUBJECT CELLULAR TELEPHONE"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2. I am a Border Patrol Agent (BPA) with the United States Border Patrol (USBP) and have been since February 2009. In May 2009, I completed a 13-week training program held at the USBP Training Academy in Artesia, New Mexico, to be certified as a Border Patrol Agent. Over the last twelve years, I have received further training in the detection, interdiction, and arrest of narcotics smugglers, alien smugglers, and aliens illegally present in the United States. I am currently assigned to the Phoenix Prosecutions Unit at the Ajo Border Patrol Station in Why, Arizona. While performing my duties as a BPA assigned to the Phoenix Prosecutions Unit, I regularly gather and organize facts material to a crime, analyze information pertaining to criminal organizations and activities, and take sworn statements from material witnesses and suspects. I am familiar with methods of operation used by criminal smugglers, including the importation, distribution and transportation of illegal drugs, the concealment and transportation of undocumented non-citizens, and the collection of money. I am also familiar with various counter-surveillance and communication methods utilized by narcotics and alien smugglers.

3. The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training, and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law

enforcement officers; analysis of public records; analysis of social media information; and analysis of telephone records.

4. Because this Affidavit is being submitted for the limited purpose of establishing probably cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II. BASIS FOR PROBABLE CAUSE

5. On August 30, 2021, at approximately 3:14 p.m., BPAs encountered Ernesto Mejia RUIZ at milepost 128 on State Route 85, where they were asked to assist DPS troopers on a vehicle stop due to a language barrier with some of the passengers. DPS troopers were also concerned for the welfare of the Spanish speaking children. RUIZ was driving a 2000 white Dodge Ram van with three passengers inside: Citlali Ruby Torres-Venegas, Luis Angel Torres-Venegas and Jimena Aguilar-Alvarez.

6. When BPAs questioned RUIZ about his relationship to the passengers RUIZ stated that, AGUILAR was his girlfriend, 10-year-old Citlali Torres and 3-year-old Luis Torres were his niece and nephew. RUIZ claimed that he was taking them to their father's house, who is his brother-in-law, in Avondale, Arizona.

7. BPAs then approached Citlali Torres and asked her how she knew the driver of the vehicle. Citlali Torres first stated that RUIZ was her uncle but then started crying and said that she did not know either the driver or passenger, of the vehicle-AGUILAR. Citlali stated that RUIZ and AGUILAR were supposed to be taking her and her brother, Luis Torres, to their mother. When BPA's questioned Citlali Torres about her citizenship she stated that her and her brother were born in Mexico.

8. BPAs then took all four individuals into custody and transported them to the Ajo Border Patrol station for further questioning and processing. Once at the station, RUIZ and AGUILAR were advised of their Miranda Rights. RUIZ acknowledged his rights, both verbally and in writing but did not agree to give a statement without counsel present. RUIZ also did not give agents consent to search his cell phone, the SUBJECT CELLULAR TELEPHONE. AGUILAR also acknowledged her rights, both verbally and in writing, and

agreed to give a statement without counsel. AGUILAR also gave agents written and verbal consent to search her cell phone.

9. During the interview with AGUILAR, she told the agents that he had been offered a job by a third party, the job was to pick up two minors from Mexico and transport them to Avondale. AGUILAR stated that she was in Mexico when she received a call stating that the minors were ready to be picked up at a Chase Bank located in San Luis, Arizona. At this point AGUILAR crossed back into the United States, was picked up by RUIZ, then they picked up the minors and began to travel to Avondale where she was pulled over by DPS near Gila Bend, Arizona. AGUILAR admitted that she was going to be paid for transporting them, although she did not know the amount she would receive. AGUILAR stated that she had done this type of work before and was paid $700 United States Dollars.

10. On September 9, 2021, at approximately 2:30 P.M. RUIZ was arrested in Tacna, Arizona, by a Border Patrol Agent, as the passenger in a vehicle transporting six undocumented non-citizens. The driver (identified as Fernando Garcia-Bernal), RUIZ, and all six undocumented non-citizens were transported back to the Wellton Border Patrol Station. RUIZ was read his Miranda Rights, waved those rights, and made a statement. In his statement RUIZ stated "we were caught with illegal aliens" but gave no further details about his involvement. GARCIA, the driver, was also read his Miranda Rights and he also waved his rights and agreed to give a statement to the Border Patrol Agents. During his statement GARCIA stated that he had been instructed by RUIZ one time prior to this event, and successfully transported undocumented non-citizens with RUIZ as a passenger. GARCIA stated that on September 9, 2021, he was contacted by RUIZ and was instructed to drive to C Street and 6th Drive. Once there GARCIA and RUIZ picked up six undocumented non-citizens and began transporting them towards Phoenix, Arizona when they were apprehended by the United States Border Patrol. No cell phone was recovered from RUIZ on September 9, 2021.

11. The SUBJECT CELLULAR TELEPHONE, seized in the August 30, 2021 encounter, is currently in the lawful possession of the USBP as it was seized incident to

RUIZ's arrest. RUIZ did not consent to a search of the SUBJECT CELLULAR TELEPHONE therefore, USBP does not have the necessary authority to examine the device. I am seeking this warrant to examine the SUBJECT CELLULAR TELEPHONE to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

12. The SUBJECT CELLULAR TELEPHONE is currently in storage in the Evidence Vault at the Ajo Border Patrol Station located at 850 AZ-85, Ajo, Arizona. In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of the USBP.

### III. <u>ITEMS TO BE SEIZED</u>

13. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONE.

14. Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows that individuals who are involved in narcotics and alien smuggling often do the following:

    a. Use cellular telephones to arrange, coordinate, and monitor smuggling activities including communicating with other smugglers, facilitators, and other transporters/drivers to coordinate contraband transportation. They also use cellular telephones to communicate with these same individuals during counter surveillance activities, to warn other co-conspirators of the presence of law enforcement or other obstacles to their smuggling plans.

    b. Use all the communication technologies available within the cellular telephone, including voice messaging, texting, audio communication, direct dial, push-to-talk, emailing, internet access, speed dial, applications, photo and video images, and contact

lists containing contact information for their criminal associates to accomplish their smuggling activities.

        c.      Use multiple cellular telephones and often change cellular telephones to avoid detection by law enforcement.

## IV. DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

15. As described in Attachment B, this application seeks permission to search for records and information that might be found in the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

16. *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

        a.      Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

        b.      Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on

personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

  c. Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

  d. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

  17. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

  a. Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

  b. As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and

experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

   c. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

   d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

   e. Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

  18. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

  19. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V. CONCLUSION

  20. Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 8

U.S.C. § 1324(a)(1)(A)(ii) (Bringing in and harboring certain aliens) are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in Attachment A.

*Anthony Lucero*
Anthony Lucero, Border Patrol Agent
U.S. Border Patrol

Subscribed and sworn to me telephonically this ___ day of September, 2021.

*M Morrissey*
HONORABLE MICHAEL T. MORRISSEY
United States Magistrate Judge